Submitted April 6, reversed and remanded May 19, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRYAN LEE BURKE,
*Defendant-Appellant.*

Lake County Circuit Court
19CR34076; A171985

489 P3d 1125

Lane W. Simpson, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Matthew Blythe, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Patricia G. Rincon, Assistant Attorney General, filed the brief for respondent.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

PER CURIAM

Mooney, J., dissenting.

Reversed and remanded.

**PER CURIAM**

Defendant was convicted after a jury trial of unlawful possession of methamphetamine, ORS 475.894. Defense counsel requested that the jury be instructed that it needed to return a unanimous verdict, but the trial court gave the then-standard instruction that the jury could return a nonunanimous verdict. After the jury returned a guilty verdict, the court asked defense counsel if he wished to poll the jury, and counsel declined. Defendant asserts on appeal, and the state acknowledges, that the trial court's instruction to the jury was erroneous under *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), in which the Court held that nonunanimous jury verdicts violate the Sixth Amendment to the United States Constitution. The only dispute on appeal is whether that error constitutes reversible error.

Defendant contends that the error constitutes "structural error" that necessarily requires reversal. The state contends that because defendant did not request a jury poll, he did not preserve his claim of error, and this court should decline to address it as plain error. *See generally State v. Dilallo*, 367 Or 340, 345-46, 478 P3d 509 (2020) (although trial court plainly erred in giving a nonunanimous jury instruction, court would not address the error as plain error where the defendant did not preserve any objection and the jury was not polled).

The answer here lies somewhere between the parties' respective positions. In *State v. Scott*, 309 Or App 615, 620-21, 483 P3d 701 (2021), we explained that when the unanimous verdict instruction issue has been preserved and the erroneous instruction given, it is then incumbent on the party receiving the benefit of the constitutional error—the state—to demonstrate that the instructional error was harmless beyond a reasonable doubt. In this situation, the burden is not on defendant to demonstrate that the error was harmful, but on the state to demonstrate that the error was harmless beyond a reasonable doubt. *Id.* at 617-18 (citing cases concerning federal constitutional error standard). Given the lack of a jury poll in this case, the state is unable

to demonstrate that the error was harmless beyond a reasonable doubt.

   Reversed and remanded.

   **MOONEY, J.,** dissenting.

   I agree that the trial court erred under *Ramos v Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), when it instructed the jury that it could reach a verdict of guilty by agreement of less than all its members. I also agree that defendant requested that the jury be given a unanimous jury instruction that the court declined to give. And, once the jury returned its guilty verdict, I agree that the court inquired of defendant whether he would like the jury polled and that defendant declined. That is where my agreement with the majority ends. I write separately because, in my view, the burden to request a jury poll did not shift to the state under the circumstances of this case and, therefore, this court's recent decision in *State v. Scott*, 309 Or App 615, 483 P3d 701 (2021), does not control the outcome here. I would affirm.

   The majority relies on *Scott* to conclude that the burden is "on the state to demonstrate that the error was harmless" because the state benefitted from the constitutional violation. 311 Or App at 612. I wrote separately and concurred in the outcome of the *Scott* decision not because the state "benefited" from the constitutional violation but because, in addition to the defendant declining a jury poll, the state also declined the court's offer to conduct a jury poll. *Id.* at 623-24 (Mooney, J., specially concurring). But that is not what happened here.

   In my view, the state never benefits from a constitutional violation,[1] and I disagree with the majority's

---

[1] As I explained in the concurring opinion in *Scott*:

   "I respectfully offer my view that the state never benefits from a constitutional violation. Consider these words, as true today as when they were written by Justice Sutherland in 1935, and as applicable to state attorneys as to United States attorneys:

   "'The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice

conclusion to the contrary. I also do not agree that the burden to request a jury poll shifted to the state when defendant affirmatively declined such a poll. By concluding that the burden shifted, the majority extends the Oregon Supreme Court's opinion in *State v. Dilallo*, 367 Or 340, 478 P3d 509 (2020), beyond the parameters of that decision. The *Dilallo* court declined to review an assignment of error relating to the same unconstitutional jury instruction that was given here and in *Scott*, "[b]ecause of the absence of a jury poll." *Id.* at 342. Like the defendant in *Dilallo*, and unlike the defendant in *Scott*, defendant in this case did not object to the offending instruction. *Dilallo*, 367 Or at 342; *Scott*, 309 Or App at 616. Regardless, *Dilallo* simply said that an objection to the jury instruction would have provided the state with notice and, importantly, it went on to say that "the absence of a jury poll is fairly attributable to defendant, *even if* the state would otherwise bear the burden of establishing harmlessness on appeal." *Dilallo*, 367 Or at 347 (emphasis added).

*Dilallo* does not say that the burden to request a jury poll shifts to the state when a defendant requests a unanimous jury instruction as was done here. And the case before us is different than *Scott* because it does not involve the state affirmatively declining the court's offer to conduct a jury poll. This case instead turns on defendant's failure to accept the court's offer to conduct a poll. I respectfully dissent.

---

shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.'

"*Berger v. United States*, 295 US 78, 88, 55 S Ct 629, 79 L Ed 1314 (1935). In my view, the state had a duty to say 'yes' when asked whether it would like the court to conduct a jury poll because the state's interest was in a just outcome—'that guilt shall not escape or innocence suffer.' *Id*. Neither the state, nor the people it represents, benefit when a person's constitutional rights are violated. And we should not suggest otherwise."

*Scott*, 309 Or App at 622-23 (Mooney, J., specially concurring).