Argued and submitted August 18, decision of Court of Appeals and judgment of circuit court affirmed December 24, 2020

STATE OF OREGON,
*Respondent on Review,*

*v.*

MICHAEL JAMES DILALLO,
*Petitioner on Review.*

(CC 17CR81038) (CA A168222) (SC S067493)

478 P3d 509

At defendant's trial, the jury was instructed that it could return nonunanimous guilty verdicts. Defendant did not object. The jury found defendant guilty, and the trial court did not poll the jury. The Court of Appeals affirmed defendant's conviction. *Held*: Because the jury was not polled, it is not appropriate to conduct plain error review of the defendant's challenge to the jury instruction permitting nonunanimous guilty verdicts.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

En Banc

On review from the Court of Appeals.*

Nora E. Coon, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Ernest G. Lannet, Chief Defender, and Joshua B. Crowther, Deputy Public Defender.

Doug M. Petrina, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney, General, Benjamin Gutman, Solicitor General, and Christopher A. Perdue, Assistant Attorney General.

Scott Sell, Thomas, Coon, Newton & Frost, Portland, filed the brief for *amicus curiae* Street Roots.

Jonathan Zunkel-deCoursey, Schwabe, Williamson & Wyatt, P.C., Portland, filed the brief for *amicus curiae*

_____
* On appeal from Lane County Circuit Court, Mustafa T. Kasubhai, Judge. 302 Or App 187, 456 P3d 702 (2020).

Immigrant and Refugee Community Organization. Also on the brief was Jeanice Chieng, Immigrant and Refugee Community Organization, Portland.

Cody Hoesly, Larkins Vacura Kayser LLP, Portland, filed the brief for *amici curiae* NAACP Corvallis Branch #1118, NAACP Eugene-Springfield Branch, #1119, NAACP Portland Chapter 1120B, and NAACP Salem-Keizer Branch #1166.

Timothy Wright, Tonkon Torp LLP, Portland, filed the brief for *amicus curiae* Don't Shoot Portland. Also on the brief was J. Ashlee Albies, Albies & Stark, Portland.

Nathan R. Morales, Perkins Coie LLP, Portland, filed the brief for *amici curiae* The Coalition of Communities of Color and Latino Network. Also on the brief was Misha Isaak.

Aliza B. Kaplan filed the brief on behalf of *amicus curiae* Criminal Justice Reform Clinic at Lewis & Clark Law School. Also on the brief was Sarah Laidlaw.

NELSON, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**NELSON, J.**

In this case, we address whether defendant's conviction should be reversed in light of the decision of the United States Supreme Court in *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), which held that only a unanimous jury can find a defendant guilty of a serious crime. At defendant's trial, consistent with Article I, section 11, of the Oregon Constitution,[1] the jury was instructed that it could convict him without reaching unanimity. Defendant did not object to that jury instruction, and the record does not reveal whether the jury's guilty verdicts were unanimous. Defendant argues that, although he did not preserve an objection to the erroneous jury instruction, we should conclude that the trial court plainly erred and exercise our discretion to review the error. *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court *** , provided that the appellate court may, in its discretion, consider a plain error."). Because of the absence of a jury poll, we conclude that it is not appropriate to consider defendant's unpreserved assignment of error, and we therefore affirm defendant's judgment of conviction.

Defendant was charged with delivery of methamphetamine and conspiracy to commit delivery of methamphetamine. He entered a plea of not guilty. Both charges were tried to a 12-person jury in 2018, before the Supreme Court's decision in *Ramos*. The trial court instructed the jury that "ten or more jurors must agree on your verdict," including on whether the state had proved a subcategory factor. Defendant did not raise an objection to that instruction at any point before or during the trial. After the jury began deliberating, the trial court asked defendant whether he had formal objections to any of the jury instructions. Defendant stated that he had none.

After deliberating, the jury found defendant guilty of both charged offenses. The court transcript reflects that

---

[1] Article I, section 11, of the Oregon Constitution provides that, "in the circuit court[,] ten members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first degree murder, which shall be found only by a unanimous verdict, and not otherwise[.]"

the trial court then inquired of the jury, "Do any of you disagree with the verdict that I have read?" The transcript does not reflect any response to the court's question. Defendant did not object to the verdicts, and he did not request that the jury be polled. Those verdicts merged into a conviction for delivery of methamphetamine, and defendant was sentenced to 90 months in prison.

Defendant appealed. He assigned error to the trial court's jury instructions permitting the jury to return nonunanimous guilty verdicts.[2] Defendant acknowledged that he had not preserved that assignment of error in the trial court, but he asked the Court of Appeals to exercise its discretion to consider the assignment of error as plain error under ORAP 5.45(1). In a decision issued before the Supreme Court's decision in *Ramos*, the Court of Appeals affirmed defendant's conviction without opinion. *State v. Dilallo*, 302 Or App 187, 456 P3d 702 (2020).

Defendant filed a petition for review in this court, again raising his challenge to the jury instruction permitting nonunanimous guilty verdicts. We initially denied the petition for review, but we subsequently granted defendant's petition for reconsideration, allowing review limited to the question of the appropriate disposition of this case in light of the Supreme Court's decision in *Ramos*.

As we explained in our decision in *State v. Flores Ramos*, also issued today, the trial court erred in instructing the jury that it could convict defendant by a nonunanimous vote. 367 Or 292, 299, 478 P3d 515 (2020) ("We conclude that the Sixth Amendment is violated when a trial court tells the jury that it can convict a defendant of a serious offense without being unanimous."). The issue that remains to be decided in this case is not whether a constitutional error occurred in defendant's trial, but whether it is appropriate to review defendant's assignment of error, when defendant did not object to the erroneous instruction in the trial court, and the record does not reveal whether the jury's verdicts were unanimous.

---

[2] Defendant also assigned error to the trial court's denial of a motion to suppress, but that issue falls outside of the scope of the question that we allowed review to address.

The fact that defendant did not preserve his assignment of error limits the availability of appellate review. ORAP 5.45(1) provides:

> "No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule, provided that the appellate court may, in its discretion, consider a plain error."

The plain error inquiry consists of two stages. At the first stage, the reviewing court must consider whether the error is plain. "For an error to be plain error, it must be an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). "If all the requirements of the first step are satisfied, then the court proceeds to the second step, where it must decide whether to 'exercise its discretion to consider or not to consider the error[.]'" *State v. Gornick*, 340 Or 160, 166, 130 P3d 780, 783 (2006) (quoting *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991) (alteration in *Gornick*)).

In this case, the state does not dispute that the first step of the plain error inquiry is satisfied, and both parties focus their arguments on whether this court should exercise its discretion to conduct plain error review. We assume, without deciding, that the trial court plainly erred when it instructed the jury that it could return nonunanimous guilty verdicts and turn to the question of whether it would be appropriate to exercise our discretion to consider the unpreserved assignment of error.

In *Ailes*, we emphasized that "[a] court's decision to recognize unpreserved or unraised error in this manner should be made with utmost caution." 312 Or at 382. That caution is based on a recognition that the preservation requirement serves important practical purposes in our system of appellate review and that reaching out to consider unpreserved errors may lead to inefficient or unfair results. Preservation promotes efficiency by giving the trial court an opportunity "to consider the legal contention or to correct an error already made." *Shields v. Campbell*, 277 Or

71, 77, 559 P2d 1275 (1977). The preservation requirement also "ensures fairness to an opposing party, by permitting the opposing party to respond to a contention and by otherwise not taking the opposing party by surprise." *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008). And, of particular importance to this case, "preservation fosters full development of the record, which aids the trial court in making a decision and the appellate court in reviewing it." *Id.* at 219-20.

We articulated, in *Ailes*, several factors to consider in making the discretionary decision to review a plain error. Those factors take into account the practical importance of the preservation requirement, as well as other important considerations that may weigh in the balance:

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error."

*Ailes*, 312 Or at 382 n 6.

In *State v. Ulery*, 366 Or 500, 464 P3d 1123 (2020), we discussed those factors to explain why we considered it appropriate to consider an unpreserved challenge to the trial court's receipt of nonunanimous verdicts. We first addressed whether the purposes of preservation had been served, stating that, "given the trial court's inability to correct the error under controlling law, the fact that it was not given an opportunity to do so does not weigh heavily." *Id.* at 504. We also noted that the error was a grave one, emphasizing that the defendant had been convicted over the votes of jurors who believed "that the state had failed to prove its case against defendant beyond a reasonable doubt." *Id*. We recognized that "the expense and difficulty associated with a retrial" weighed against reviewing the error, but we concluded that the balance weighed in the defendant's favor. *Id.*

In this case, those factors weigh differently. Our decision in *Ulery* was based on a recognition that the failure

to object in the trial court did not have a practical effect on the proceedings in that court. Because the jury had been polled, the pertinent record had been developed as fully as it could have been. Moreover, the trial court was bound by controlling law to accept the nonunanimous verdicts, and we did not identify any way in which the state had been prejudiced by the defendant's failure to object.

This record, by contrast, lacks any indication of whether the jury's verdicts were unanimous. A jury poll could have been requested by either party, in which case the trial court would have been obligated to perform one. *See* ORCP 59 G(3) ("When the verdict is given, and before it is filed, the jury may be polled on the request of a party, for which purpose each juror shall be asked whether the verdict is the juror's verdict."); ORS 136.330(1) (providing that ORCP 59 G(3) applies to criminal cases); *Brooks v. Gladden*, 226 Or 191, 193, 358 P2d 1055 (1961) ("Although the statute is cast in language indicating that the polling of the jury is discretionary with the trial judge, it is firmly established by our previous decisions that the right to have the jury polled is absolute."). The trial court directed a question to the jury, the answer to which does not appear in the record, but neither party requested a formal poll.

Defendant argues that the deficiency in the record does not matter and that, if it does, it should be attributed to the state, not to his failure to object. Defendant's first line of argument is that it does not make a difference whether the jury was polled because a nonunanimous jury instruction is reversible error regardless of whether the jury's verdict is unanimous. He argues that a nonunanimous jury instruction is a structural error that is not susceptible to a harmlessness analysis. In the alternative, he argues that, even if a jury instruction permitting nonunanimous verdicts is subject to a harmlessness analysis, a jury poll revealing that the jury was unanimous would be insufficient to show that the error was harmless.

Those arguments are identical to those that we rejected in *Flores Ramos*. In that decision, we held that a nonunanimous jury instruction is not structural error and that a jury poll demonstrating that the verdict was

unanimous is sufficient to show that the instructional error was harmless beyond a reasonable doubt. 367 Or at 319-20. In *Flores Ramos*, we therefore affirmed the defendant's unanimous convictions but reversed the sole conviction based on a nonunanimous verdict. *Id.* at 334. *Flores Ramos* establishes that the information that would have been revealed by a jury poll would not only be important, it would likely be dispositive.

Defendant next argues that it was the state's obligation to request a jury poll. In making that argument, defendant relies on the harmlessness standard for federal constitutional error set out in *Chapman v. California*, 386 US 18, 87 S Ct 824, 17 L Ed 2d 705 (1967), which requires "the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 24. Defendant asserts that, even when a defendant has not preserved an assignment of error, "[t]he burden remains on the state to prove beyond a reasonable doubt that the error was harmless."

Defendant may be right that the state would be unable to show that the instructional error that occurred in this case was harmless beyond a reasonable doubt, if we did exercise our discretion to review the error. But that does not mean that plain error review is appropriate; rather, it militates against a conclusion that "the policies behind the general rule requiring preservation of error have been served in the case," *Ailes*, 312 Or at 382 n 6. The fact that the opposing party may need to take additional steps to develop the record in order to address an assignment of error is one of the reasons that a timely objection is required. *See Peeples*, 345 Or at 219-20 (so explaining). Here, defendant did not put the state or the court on notice of his objection to the jury instruction, so the absence of a jury poll is fairly attributable to defendant, even if the state would otherwise bear the burden of establishing harmlessness on appeal. In this case, therefore, an important purpose of the preservation requirement was not served, because the record was not fully developed.

That lack of record development also affects our evaluation of the gravity of the error. In *Ulery*, we knew that

the jury's verdicts had been nonunanimous, which is why we concluded that the error was a grave one. 366 Or at 504. In this case, we do not know whether the jury reached unanimous verdicts. The consequent uncertainty over whether the erroneous jury instruction affected the result of the trial is directly linked to defendant's failure to object. As the state notes, reversal of defendant's conviction would lead to an anomaly: many defendants in cases where the jury was polled will have their convictions affirmed if the poll revealed that the verdicts were unanimous, but defendant would be guaranteed a reversal, regardless of whether the jury reached a unanimous verdict, because of a deficiency in the record that could have been avoided if he had objected. As a result, defendant's failure to comply with the preservation requirement would not only be excused, it would be rewarded.

Defendant responds to that concern by arguing that there is no indication that he withheld an objection to the nonunanimous jury instruction for strategic reasons. He argues that because, after *Ramos*, juries will not be instructed that they can return nonunanimous guilty verdicts, this situation will not arise again, so any incentive not to object to those instructions that would be created by a ruling in his favor will not matter.

But the effect of judicial decisions cannot be cabined so easily; rewarding a failure to preserve an assignment of error in this case will inevitably generate expectations in analogous cases. And the question before us is not just how future cases will be affected but "whether, in the context of an individual case, reaching the unpreserved error would advance the ends of justice." *State v. Ramirez*, 343 Or 505, 513-14, 173 P3d 817 (2007), *opinion amended on recons*, 344 Or 195, 179 P3d 673 (2008). In this case, allowing defendant to benefit from his failure to preserve an objection, and requiring the state to undergo a retrial that could have been avoided had the record in this case been fully developed, would be contrary to the basic goal of "procedural fairness to the parties and to the trial court" that motivates the preservation requirement. *Peeples*, 345 Or at 220.

For those reasons, we conclude that it is not appropriate to exercise our discretion to review defendant's unpreserved assignment of error as plain error. We therefore affirm defendant's conviction.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.